# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| ANCORA TECHNOLOGIES, INC. <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC., <br><br> Defendants. | Civil Action No. 6:19-cv-385 <br><br> Jury Trial Requested |

## COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement in which Ancora Technologies, Inc. makes the following allegations against Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc. (collectively, "Samsung"):

## RELATED CASE

1. This case is related to the action *Ancora Technologies, Inc. v. LG Electronics, Inc., et al.*, filed June 21, 2019, in the United States District Court for the Western District of Texas, Waco Division.

## PARTIES

2. Plaintiff Ancora Technologies, Inc. is a corporation organized and existing under the laws of the State of Delaware with a place of business at 23977 S.E. 10th Street, Sammamish, Washington 98075.

3. Defendant Samsung Electronics Co. Ltd. is a corporation organized and existing under the laws of the Republic of Korea with a principal place of business at 129, Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-Do, Korea 443-742.

4. Defendant Samsung Electronics America, Inc. is a wholly owned subsidiary corporation of Samsung Electronics Co. Ltd. organized and existing under the laws of New York with a principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660 and offices and/or other facilities in Texas at least at 12100 Samsung Blvd, Austin, Texas 78754; 2800 Wells Branch Pkwy, Austin, TX 78728; 1301 East Lookout Drive, Richardson, Texas 75082; and 6635 Declaration Drive, Plano, TX 75023.

5. Further, Defendant Samsung Electronics America, Inc. merged with Samsung Telecommunications America LLC in January 2015. *Koninklijke KPN N.V. v. Samsung Telecommunications America LLC, et al.*, Case No. 2:14-cv-01165-JRG (E.D. Tex.) at Dkt. 34. Prior to such merger, Samsung Telecommunications America LLC was involved in the sales and distribution of Samsung-branded consumer electronics products in the United States.

6. On information and belief, Defendant Samsung Electronics America, Inc. is liable for any act for which Samsung Telecommunications America LLC otherwise would be or would have been liable, including for any infringement alleged in this matter, and references herein to Samsung Electronics America, Inc. should be understood to encompass such acts by Samsung Telecommunications America LLC.

## **JURISDICTION AND VENUE**

7. This action arises under the patent laws of the United States, Title 35 of the United States Code.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9. This Court has personal jurisdiction over Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc. because, directly or through intermediaries, each has committed acts within the Western District of Texas giving rise to this action and/or has established minimum contacts with the Western District of Texas such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

10. For example, Samsung Electronics America maintains regular and established place offices in the Western District of Texas, including at 12100 Samsung Blvd, Austin, Texas 78754 and 2800 Wells Branch Pkwy, Austin, TX 78728.

11. Further, on information and belief, Samsung Electronics Co., Ltd. directs and controls the actions of Samsung Electronics America such that it too maintains regular and established offices in the Western District of Texas, including at 12100 Samsung Blvd, Austin, Texas 78754, and 2800 Wells Branch Pkwy, Austin, TX 78728.

12. Samsung Electronics Co., Ltd. also owns and operates a manufacturing facility in Austin, Texas.

13. In addition, Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc. have placed or contributed to placing infringing products like the Samsung Galaxy S7 into the stream of commerce via an established distribution channel knowing or understanding that such products would be sold and used in the United States, including in the Western District of Texas.

14. On information and belief, Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc. also have each derived substantial revenues from infringing acts in the Western District of Texas, including from the sale and use of infringing products like the Samsung Galaxy S7.

15. Venue is proper under 28 U.S.C. § 1391(b)-(c) and 28 U.S.C. § 1400.

16. In particular, Samsung Electronics Co. Ltd. is a corporation organized and existing under the laws of the Republic of Korea, and Samsung Electronics America has maintained regular and established places of business at 12100 Samsung Blvd, Austin, Texas 78754 and 2800 Wells Branch Pkwy, Austin, TX 78728. *In re HTC Corp.*, 889 F.3d 1349, 1354 (Fed. Cir. 2018); *In re Cray Inc.*, 871 F.3d 1355, 1362-63 (Fed. Cir. 2017).

## THE ASSERTED PATENT

17. This lawsuit asserts causes of action for infringement of United States Patent No. 6,411,941 ("the '941 patent"), which is entitled "Method of Restricting Software Operation Within a License Limitation." A true and correct copy of the '941 patent is attached as Exhibit A.

18. The U.S. Patent and Trademark Office duly and legally issued the '941 patent on June 25, 2002.

19. Subsequent to issue, and at least by December 21, 2004, all right, title, and interest in the '941 patent, including the sole right to sue for any infringement, were assigned to Ancora Technologies, Inc., which has held, and continues to hold, all right, title, and interest in the '941 patent.

20. The president of Ancora Technologies, Inc.—Mr. Miki Mullor—is one of the inventors of the '941 patent.

21. A reexamination certificate to the '941 patent subsequently was issued on June 1, 2010. A true and correct copy of that certificate is attached as Exhibit A.

22. Since being assigned to Ancora Technologies, Inc., the '941 patent has been asserted in patent infringement actions filed against Microsoft Corporation, Dell Incorporated, Hewlett Packard Incorporated, Toshiba America Information Systems, Apple Incorporated, HTC America, Inc., and HTC Corporation.

23. In the course of these litigations, a number of the '941 patent's claim terms have been construed and the validity of the '941 patent has repeatedly been affirmed.

24. For example, in December 2012, the United States District Court for the Northern District of California issued a claim construction order construing the terms (1) "volatile memory"; (2) "non-volatile memory"; (3) "BIOS"; (4) "program"; (5) "license record"; and (6) "verifying the program using at least the verification structure." *Ancora Techs., Inc. v. Apple Inc.*, No. 11–CV–06357 YGR, 2012 WL 6738761, at *1 (N.D. Cal. Dec. 31, 2012).

25. Further, in its order, the court rejected Apple's indefiniteness arguments and further held that, at least with respect to Claims 1-3 and 5-17, "[t]he steps of the Claim do not need to be performed in the order recited." *Ancora Techs., Inc. v. Apple Inc.*, No. 11–CV–06357 YGR, 2012 WL 6738761, at *5, 13 (N.D. Cal. Dec. 31, 2012).

26. Subsequently, the United States Court of Appeals for the Federal Circuit affirmed the district court's rejection of Apple's indefiniteness argument. *Ancora Techs., Inc. v. Apple, Inc.*, 744 F.3d 732, 739 (Fed. Cir. 2014).

27. Further, the Federal Circuit agreed with Ancora Technologies, Inc. that "the district court erred in construing 'program' to mean 'a set of instructions for software applications that can be executed by a computer'"—holding that, as Ancora had argued, the term should be accorded its normal meaning of "'a set of instructions' for a computer." *Ancora Techs., Inc. v. Apple, Inc.*, 744 F.3d 732, 734-35, 737 (Fed. Cir. 2014).

28. Further, in a recent decision, the Federal Circuit again affirmed the validity of the '941 patent—stating: "[W]e conclude that claim 1 of the '941 patent is not directed to an abstract idea." *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343 (Fed. Cir. 2018), *as amended* (Nov. 20, 2018).

5

29.     In addition, the Patent Trial and Appeal Board rejected HTC's request to institute covered business method review proceedings on the '941 patent—explaining that "the '941 patent's solution to the addressed problem is rooted in technology, and thus, is a 'technical solution'" and also rejecting HTC's argument that "the '941 patent recites a technological solution that is not novel and nonobvious." A true and correct copy of this decision is attached as Exhibit B.

## COUNT 1 – INFRINGEMENT

30.     Plaintiff repeats and incorporates by reference each preceding paragraph as if fully set forth herein and further state:

31.     Samsung has infringed the '941 patent in violation of 35 U.S.C. § 271(a) by, prior to the expiration of the '941 patent, selling, and/or offering for sale in the United States, and/or importing into the United States, without authorization, products that are capable of performing at least Claim 1 of the '941 patent literally or under the doctrine of equivalents and/or, without authorization, causing products to perform each step of at least Claim 1 of the '941 patent.

32.     At a minimum, such Accused Products include those servers/software utilized by Samsung to transmit an over-the-air ("OTA") software update, as well as those smartphones and other devices and technology that received from Samsung, or received at Samsung's direction, an OTA update that caused such device to perform the method recited in Claim 1 prior to the expiration of the '941 patent.

33.     Such Accused Products include products like the Samsung Galaxy S7, which—as detailed below—is configured by Samsung such that it is capable of performing each step of Claim 1 of the '941 patent and to which Samsung provided one or more OTA updates on or about February

17, February 21, March 7, April 21, and May 8, 2017, that would cause a Samsung Galaxy S7 device to perform each step of Claim 1 in order to upgrade its operating system to Android 7.0.[1]

34. Such Accused Products also include products like the Samsung Admire, Samsung Captivate Glide, Samsung Conquer 4G, Samsung Dart, Samsung DoubleTime, Samsung Droid Charge, Samsung Epic 4G Touch, Samsung Exhibit 4G, Samsung Exhibit II 4G, Samsung Fascinate 4G, Samsung Galaxy Ace, Samsung Galaxy Fit, Samsung Galaxy Gio, Samsung Galaxy Giorgio Armani Galaxy S, Samsung Galaxy Indulge, Samsung Galaxy M Pro, Samsung Galaxy mini, Samsung Galaxy Nexus, Samsung Galaxy Nexus CDMA, Samsung Galaxy Note, Samsung Galaxy Note, Samsung Galaxy Pop i559, Samsung Galaxy Prevail, Samsung Galaxy Pro, Samsung Galaxy Q T589R, Samsung Galaxy R, Samsung Galaxy S 4G, Samsung Galaxy S II, Samsung Galaxy S Plus, Samsung Galaxy S WiFi 5.0, Samsung Galaxy SL, Samsung Galaxy W, Samsung Galaxy Xcover, Samsung Galaxy Y, Samsung Google Nexus S 4G, Samsung Gravity SMART, Samsung Illusion, Samsung Indulge, Samsung Infuse 4G, Samsung M220L Galaxy Neo, Samsung Replenish, Samsung Repp, Samsung Sidekick 4G SGH-T839, Samsung Stratosphere, Samsung Transfix, Samsung Transform Ultra, Samsung Exhilarate, Samsung Galaxy Ace 2, Samsung Galaxy Ace Advance S6800, Samsung Galaxy Ace DUOS, Samsung Galaxy Ace Duos S6802, Samsung Galaxy Ace II X S7560M, Samsung Galaxy Ace Plus, Samsung Galaxy Admire 4G, Samsung Galaxy Appeal, Samsung Galaxy Attain 4G, Samsung Galaxy Axiom, Samsung Galaxy Beam I8530, Samsung Galaxy Camera GC100, Samsung Galaxy Chat, Samsung Galaxy Discover, Samsung Galaxy Exhilarate, Samsung Galaxy M Style M340S, Samsung Galaxy mini 2, Samsung Galaxy

---

[1] This description of infringement is illustrative and not intended to be an exhaustive or limiting explanation of every manner in which each Accused Product infringes the '941 patent. Further, on information and belief, the identified functionality of the Samsung Galaxy S7 are representative of components and functionality present in all Accused Products.

Music, Samsung Galaxy Nexus I9250M, Samsung Galaxy Nexus LTE L700, Samsung Galaxy Note II, Samsung Galaxy Note LTE G, Samsung Galaxy Player 70 Plus, Samsung Galaxy Pocket, Samsung Galaxy Pop Plus S5570i, Samsung Galaxy Premier, Samsung Galaxy Proclaim S720C, Samsung Galaxy Reverb, Samsung Galaxy Rugby Pro, Samsung Galaxy Rush Galaxy Rush, Samsung Galaxy S Advance, Samsung Galaxy S Blaze 4G, Samsung Galaxy S III, Samsung Galaxy S III mini, Samsung Galaxy S Lightray 4G, Samsung Galaxy S Relay 4G, Samsung Galaxy Stellar, Samsung Galaxy Stellar 4G I200, Samsung Galaxy Stratosphere II, Samsung Galaxy Victory 4G LTE, Samsung Rugby Smart, Samsung Galaxy Core, Samsung Galaxy Exhibit, Samsung Galaxy Express, Samsung Galaxy Fame, Samsung Galaxy Grand, Samsung Galaxy Mega 5.8, Samsung Galaxy Mega 6.3, Samsung Galaxy Pocket Neo, Samsung Galaxy Pocket Plus, Samsung Galaxy S4, Samsung Galaxy S4 Active, Samsung Galaxy S4 CDMA, Samsung Galaxy S4 mini, Samsung Galaxy S4 Zoom, Samsung Galaxy Star, Samsung Galaxy Star S5280, Samsung Galaxy Trend II Duos S7572, Samsung Galaxy Win, Samsung Galaxy Win I8550, Samsung Galaxy Xcover 2, Samsung Galaxy Y Plus S5303, Samsung Galaxy Young, Samsung Gravity Q, Samsung Galaxy S5 mini, Samsung Galaxy Core Prime, Samsung Galaxy Note 4, Samsung Galaxy S3 Neo, Samsung Galaxy S5, Samsung Galaxy S5 Active, Samsung Galaxy Note 5, Samsung Galaxy S6 Edge+, Samsung Galaxy E5, Samsung Galaxy Note5, Samsung Galaxy S6, , Samsung Galaxy S6 Active, Samsung Galaxy S6 Edge, Samsung Galaxy J2 Prime, Samsung Galaxy S7, Samsung Galaxy Express Prime 3, Samsung Galaxy Grand Prime Plus, Samsung Galaxy J7 Prime, Samsung Galaxy Note7, Samsung Galaxy S7, Samsung Galaxy S7 Active, Samsung Galaxy S7 Edge, Samsung Galaxy J2, Samsung Galaxy J3, Samsung Galaxy J3 Emerge, Samsung Galaxy J7 Sky Pro, Samsung Galaxy Note 8, Samsung Galaxy S8, Samsung Galaxy S8 Active, Samsung Galaxy S8+, Samsung Galaxy A6, Samsung Galaxy J3, Samsung Galaxy J7, Samsung Galaxy Note 9, Samsung Galaxy S9,

Samsung Galaxy S9+, Samsung Galaxy Player 5, Samsung Galaxy S WiFi 3.6, Samsung Galaxy Tab 10.1, Samsung Galaxy Tab 4G LTE, Samsung Galaxy Tab 7.0 Plus, Samsung Galaxy Tab 7.7, Samsung Galaxy Tab 8.9, Samsung Galaxy Tab Wi-Fi, Samsung Galaxy Note 10.1, Samsung Galaxy Note LTE 10.1 N8020, Samsung Galaxy Player 3.6, Samsung Galaxy Player 4.2, Samsung Galaxy Tab 2, Samsung Galaxy Tab 2 (10.1), Samsung Galaxy Tab 2 (7.0), Samsung Galaxy Tab 2 (7.0) LTE, Samsung Galaxy Tab 2 10.1, Samsung Galaxy Tab 2 7.0 I705, Samsung Galaxy Tab 7.7 LTE, Samsung Galaxy Tab 8.9 4G P7320T, Samsung Google Nexus 10, Samsung Google Nexus 10 P8110, Samsung Galaxy Note 8.0, Samsung Galaxy S 4, Samsung Galaxy Tab 10.1, Samsung Galaxy Tab 3, Samsung Galaxy Tab 3 10.1 P5200, Samsung Galaxy Tab 3 7.0 P3200, Samsung Galaxy Tab 3 8.0, Samsung Galaxy Tab 4 10.1, Samsung Galaxy Tab 4 7.0, Samsung Galaxy Tab 4 8.0, Samsung Galaxy Tab Pro 10.1, Samsung Galaxy Tab Pro 8.4, Samsung Galaxy Tab S 10.5, Samsung Galaxy Tab S 8.4, Samsung Galaxy Tab A, Samsung Galaxy Tab E, Samsung Galaxy Tab S2 8.0 (/VE) (/VE_N)+B962, Samsung Galaxy Tab 10.1 32GB White, Samsung Galaxy Tab A 7.0 and 10.1, Samsung Galaxy Tab S3, and Samsung Galaxy Tab S4, to which Samsung provided an OTA update prior to the expiration of the '941 patent.

35.    For example, Claim 1 of the '941 patent claims "a method of restricting software operation within a license for use with a computer including an erasable, non-volatile memory area of a BIOS of the computer, and a volatile memory area; the method comprising the steps of: [1] selecting a program residing in the volatile memory, [2] using an agent to set up a verification structure in the erasable, non-volatile memory of the BIOS, the verification structure accommodating data that includes at least one license record, [3] verifying the program using at least the verification structure from the erasable non-volatile memory of the BIOS, and [4] acting on the program according to the verification."

9

36. When Samsung transmitted an OTA update like those it sent on or about on or about February 17, February 21, March 7, April 21, and May 8, 2017, Samsung performed and/or caused to be performed each of these elements as part of what is described as "verified boot":

> **Verified Boot**
>
> Verified Boot strives to ensure all executed code comes from a trusted source (usually device OEMs), rather than from an attacker or corruption. It establishes a full chain of trust, starting from a hardware-protected root of trust to the bootloader, to the boot partition and other verified partitions including `system`, `vendor`, and optionally `oem` partitions. During device boot up, each stage verifies the integrity and authenticity of the next stage before handing over execution.
>
> In addition to ensuring that devices are running a safe version of Android, Verified Boot check for the correct version of Android with rollback protection. Rollback protection helps to prevent a possible exploit from becoming persistent by ensuring devices only update to newer versions of Android.
>
> In addition to verifying the OS, Verified Boot also allows Android devices to communicate their state of integrity to the user.

https://source.android.com/security/verifiedboot.

37. In particular, each Samsung Galaxy S7 contains both erasable, non-volatile memory in the form of ROM and volatile memory in the form of RAM.

38. Further, each Samsung Galaxy S7 was configured by Samsung to perform the below described process (or one substantially like it) in order to install an OTA update:

10

> **Life of an OTA update**
>
> A typical OTA update contains the following steps:
>
> 1. Device performs regular check in with OTA servers and is notified of the availability of an update, including the URL of the update package and a description string to show the user.
> 2. Update downloads to a cache or data partition, and its cryptographic signature is verified against the certificates in `/system/etc/security/otacerts.zip`. User is prompted to install the update.
> 3. Device reboots into recovery mode, in which the kernel and system in the recovery partition are booted instead of the kernel in the boot partition.
> 4. Recovery binary is started by init. It finds command-line arguments in `/cache/recovery/command` that point it to the downloaded package.
> 5. Recovery verifies the cryptographic signature of the package against the public keys in `/res/keys` (part of the RAM disk contained in the recovery partition).
> 6. Data is pulled from the package and used to update the boot, system, and/or vendor partitions as necessary. One of the new files left on the system partition contains the contents of the new recovery partition.
> 7. Device reboots normally.
>    a. The newly updated boot partition is loaded, and it mounts and starts executing binaries in the newly updated system partition.
>    b. As part of normal startup, the system checks the contents of the recovery partition against the desired contents (which were previously stored as a file in `/system`). They are different, so the recovery partition is reflashed with the desired contents. (On subsequent boots, the recovery partition already contains the new contents, so no reflash is necessary.)
>
> The system update is complete! The update logs can be found in `/cache/recovery/last_log.#`.

https://source.android.com/devices/tech/ota/nonab.

39. During this process, a program running on one or more OTA servers owned and/or controlled by Samsung sets up a verification structure in the erasable, non-volatile memory of the BIOS of a Samsung Galaxy S7 by transmitting to the device an OTA update, which the Samsung Galaxy S7 is configured by Samsung to thereafter save to a cache or data partition of the erasable, non-volatile memory of its BIOS.

40. This OTA update contains a verification structure that include data accommodating at least one license record. Examples of such a license record include a cryptographic signature or key:

11

> **Signing Builds for Release**
>
> Android OS images use cryptographic signatures in two places:
>
> 1. Each .apk file inside the image must be signed. Android's Package Manager uses an .apk signature in two ways:
>    - When an application is replaced, it must be signed by the same key as the old application in order to get access to the old application's data. This holds true both for updating user apps by overwriting the .apk, and for overriding a system app with a newer version installed under `/data`.
>    - If two or more applications want to share a user ID (so they can share data, etc.), they must be signed with the same key.
> 2. OTA update packages must be signed with one of the keys expected by the system or the installation process will reject them.

https://source.android.com/devices/tech/ota/sign_builds.

      41.      Such license record also may comprise a cryptographic hash or hash tree:

> **Verifying Boot**
>
> Verified boot requires cryptographically verifying all executable code and data that is part of the Android version being booted before it is used. This includes the kernel (loaded from the `boot` partition), the device tree (loaded from the `dtbo` partition), `system` partition, `vendor` partition, and so on.
>
> Small partitions, such as `boot` and `dtbo`, that are read only once are typically verified by loading the entire contents into memory and then calculating its hash. This calculated hash value is then compared to the *expected hash value*. If the value doesn't match, Android won't load. For more details, see Boot Flow.
>
> Larger partitions that won't fit into memory (such as, file systems) may use a hash tree where verification is a continuous process happening as data is loaded into memory. In this case, the root hash of the hash tree is calculated during run time and is checked against the *expected root hash value*. Android includes the dm-verity driver to verify larger partitions. If at some point the calculated root hash doesn't match the *expected root hash value*, the data is not used and Android enters an error state. For more details, see dm-verity corruption.
>
> The *expected hashes* are typically stored at either the end or beginning of each verified partition, in a dedicated partition, or both. Crucially, these hashes are signed (either directly or indirectly) by the root of trust. As an example, the AVB implementation supports both approaches, see Android Verified Boot for details.

https://source.android.com/security/verifiedboot/verified-boot.

      42.      Once the verification structure has been set up in the BIOS, the Samsung Galaxy S7 is configured by Samsung to reboot into recovery mode, load the OTA update into its volatile memory (e.g., RAM), and use the at least one license record from the BIOS to verify the OTA update.

12

43. If the OTA update is verified, the Samsung Galaxy S7 is further configured to load and execute the update.

44. In sum, as described above, once Samsung has set up the verification structure by transmitting to a device an OTA update like those Samsung provided on or about February 17, February 21, March 7, April 21, and May 8, 2017, each Accused Product is configured to automatically perform each of the remaining Claim 1 steps.

45. Further, on information and belief, when Samsung provided an OTA update like those Samsung provided on or about February 17, February 21, March 7, April 21, and May 8, 2017, Samsung performed or caused to be performed each of the Claim 1 steps.

46. Further, Samsung conditions participation in the OTA update process and the receipt of the benefit of a software update on the performance of each of the above steps.

47. Primarily, as described above, Samsung pre-configures/programs each Accused Product to perform the above described steps upon receiving an OTA update from Samsung.

48. Further, Samsung takes steps to ensure that each Accused Product cannot install an OTA update except by performing each of the above described steps.

49. For example, Samsung precludes third parties from altering an Accused Product to allow it to install such updates in a different manner, including by stating in its Terms and Conditions that "installation of unauthorized software and unauthorized root access" voids Samsung's Standard Limited Warranty. https://www.samsung.com/us/Legal/Phone-HSGuide/.

50. Further, Samsung emphasizes the benefits associated with updating the software of its Accused Products.

51. For example, Samsung has stated that "operating software" should be kept "up to date for the best experience":

13





52. Samsung also identified the following specific benefits associated with updating a Samsung Galaxy S7 to Android 7.0—the update that Samsung released to such devices in the United States on or about February 17, February 21, March 7, April 21, and May 8, 2017:

14



https://news.samsung.com/global/samsung-begins-rollout-of-android-7-0-nougat.

> Nougat is now being rolled out, starting with the Samsung Galaxy S7 and S7 Edge. There are a number of new features including:
>
> **Camera**
> - New modes and filters by swiping when in the camera
> - Change your skin tone, eye size and face shape when taking a selfie
> - Add a spotlight to your photos
> - Auto create stories within the gallery, based on people, locations or times tagged
> - Use the volume button to immediately take a burst shot
>
> **Settings**
> - Settings are simply laid out and grouped together
> - Able to link a physical keyboard
> - New Android 'hidden' game in the Software version
>
> **Applications**
> - Internet app now features extensions, similar to desktop internet applications
> - A number of pre-loaded apps including Android Pay and Samsung Gear
> - Calendar app linked to the weather Widget, so you can see the weather forecast when planning activities
> - More settings for apps accessing different parts of the device, for example 'Do not disturb' or 'Allow unrestricted data usage' permission
>
> **Notification and shortcuts menu**
> - Expanded information in notifications
> - Search function and scan for nearby devices within the notification panel
> - More settings for notifications including silent and hidden notifications
>
> **Display**
> - In-built blue light filter to ease the strain on your eyes in the evening and night time
> - Screen resolution can be changed from High Definition, Full High Definition to Wide Quad High Definition
> - Screen display can be zoomed in
> - Medical information can be displayed on your screen, even if the device is locked
>
> **Communication**
> - Messages and contacts are linked more fluidly
> - Quick call function – holding the home key on any screen and speaking a contacts name will call them
> - Use voice commands to answer or reject calls

https://www.samsung.com/uk/support/mobile-devices/what-are-the-new-features-of-android-7-0-nougat/.

53. Samsung has made similar statements emphasizing the benefit of performing other OTA updates.

54. Further, Samsung controlled the manner of the performance of such method. As set forth above, Samsung configured each Accused Product such that, upon receiving an OTA update, it would automatically perform each remaining step of the claimed method.

16

55. Samsung also controlled the timing of the performance of such method by determining when to utilize its OTA servers/software to set up a verification structure in each Accused Product.

56. Samsung also had the right and ability to stop or limit infringement simply by not performing the initial step of using its OTA servers/software to set up a verification structure in each Accused Product. Absent this action by Samsung, the infringement at issue would not have occurred.

57. Samsung's infringement has caused damage to Ancora, and Ancora is entitled to recover from Samsung those damages Ancora has sustained as a result of Samsung's infringement.

## DEMAND FOR JURY TRIAL

58. Plaintiff hereby demands a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. Declaring that Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc., have infringed United States Patent No. 6,411,941 in violation of 35 U.S.C. § 271;

B. Awarding damages to Ancora arising out of this infringement, including enhanced damages pursuant to 35 U.S.C. § 284 and prejudgment and post-judgment interest, in an amount according to proof;

C. Awarding such other costs and relief the Court deems just and proper, including any relief that the Court may deem appropriate under 35 U.S.C. § 285.

Date: June 21, 2019.	Respectfully submitted,

By:  */s/ Charles Ainsworth*

Charles Ainsworth
State Bar No.  00783521
Robert Christopher Bunt
State Bar No. 00787165
PARKER, BUNT & AINSWORTH, P.C.
100 E. Ferguson, Suite 418
Tyler, TX 75702
903/531-3535
E-mail: charley@pbatyler.com
E-mail: rcbunt@pbatyler.com